16149

STATE v. STEADMAN
(51 S. E. (2d) 91)

*Messrs. Coble Funderburk,* of Monroe, N. C., *and C. T. Gradyon,* of Columbia, *for Appellant,*

4

*Mr. T. P. Taylor, Solicitor,* of Columbia, *for Respondent,*

November 22, 1948.

BAKER, Chief Justice.

The appellant, Ida E. Steadman, was indicted in the Court of General Sessions for Richland County under two sections of the Code—Sections 1112 and 1113, reading respectively as follows:

"Any person who shall administer to any woman with child, or prescribe for any such woman, or suggest to or advise or procure her to take, any medicine, substance, drug or thing whatever, or who shall use or employ, or advise the use or employment of, any instrument or other means of force whatever, with intent thereby to cause or procure the miscarriage or abortion or premature labor of any such woman, unless the same shall have been necessary to preserve her life, or the life of such child, shall, in case the death of such child or of such woman results in whole or in part therefrom, be deemed guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the penitentiary for a term not more than twenty years nor less than five years. But no conviction shall be had under the provisions of this section upon the uncorroborated evidence of such woman."

"Any person who shall administer to any woman with child, or prescribe or procure or provide for any such woman, or advise or procure any such woman to take any medicine, drug, substance or thing whatever, or shall use or employ or advise the use or employment of, any instrument or other means or force whatever, with intent thereby to cause or produce the miscarriage or abortion or premature labor of any such woman, shall, upon conviction thereof, be punished by imprisonment in the penitentiary for a term not more than five years, or by fine not more than five thousand dollars, or by such fine and imprisonment both, at the discretion of the court, but no conviction shall be had under the provisions of this section upon the uncorroborated evidence of such a woman."

While for the purpose of this opinion, it is unnecessary, yet it is proper to mention that prior to pleading to the indictment, the appellant, through counsel, moved to quash the indictment on the ground that it contained two separate and distinct statutory crimes, and that, under the law, they couldn't be joined in the same indictment; and failing in this

motion, it was further moved that the State be required to elect upon which count (section of the Code) it would proceed. (The first count was alleged under Section 1112, and the second count under Section 1113, both following closely the wording of the sections.)

These motions were refused, and exceptions thereto duly taken. There are other exceptions relating to the admission, upon the trial of the case, of certain testimony of damaging effect to the appellant, and to "permitting the Solicitor to ask highly leading and prejudicial questions, and in allowing him to make highly prejudicial remarks, and in letting in certain responses from the State's witnesses which were highly prejudicial." No further reference will be made to these exceptions by way of discussion.

Following the refusal of the trial Judge to either quash the indictment or require the State to elect under which section of the Code it would proceed, a trial was entered upon, after a plea of "Not Guilty" by the appellant.

At the conclusion of the testimony in behalf of the State, the appellant unsuccessfully moved for a direction of verdict of "Not Guilty" generally, and again after all testimony was in, the appellant unsuccessfully moved for a direction of verdict of "Not Guilty" under Section 1112 of the Code in that there was no evidence of a child being killed or of there being such a child that could have been killed, and that, therefore, the appellant could not be guilty under said Section 1112, and that such count in the indictment should be eliminated from the consideration of the jury.

The jury found the appellant guilty on the first count, that is to say, guilty under Section 1112, and the trial Judge imposed a sentence of seven years.

The exceptions to which we direct our attention, and the only ones necessary for the Court to consider in this appeal, raise the issue if there was sufficient proof of the *corpus*

*delicti* to allow the Judge to submit the case to the jury under Section 1112 of the Code. Stated in another way, did the trial Judge err when he refused to grant the appellant's motion for a direction of verdict of not guilty as to the first count in the indictment?

For the purpose of deciding this question, let it be conceded (without so holding) that there is no merit in any of the other exceptions, and that there was ample testimony requiring the submission of this case to the jury under Section 1113, even with the elimination of the recorded telephone conversation.

Section 1112 makes a statutory offense out of what theretofore had been a crime under the common law, though not termed "abortion"; and Section 1113 makes a statutory offense out of what prior to the enactment of the statute was not cognizable by the common law, when committed with the assent of the pregnant woman. At common law, an abortion produced with the woman's consent, was not a crime unless the woman was "quick with child," that is, when the embryo had advanced to that degree of maturity where the child had a separate and independent existence, and the woman has herself felt the child alive and quick within her. *Commonwealth v. Parker,* 9 Metc. 263, 50 Mass. 263, 43 Am. Dec. 396; *Mitchell v. Commonwealth,* 78 Ky. 204, 39 Am. Rep. 227; *State v. Forte,* 222 N. C. 537, 23 S. E. (2d) 842.

"Life begins, in contemplation of law, as soon as an infant is able to stir in the mother's womb." 1 Bl. Com. 129. As stated in *State v. Cooper,* 22 N. J. L. 52, 51 Am. Dec. 248. "It is not material whether, speaking with physiological accuracy, life may be said to commerce at the moment of quickening, or at the moment of conception, or at some intervening period. In contemplation of law, life commences at the moment of quickening, at that moment when the embryo gives the first physical proof of life, no matter when it first received it."

From the earliest enactment of statutes designating the offense under discussion as "abortion," and until the present day, a distinction between the condition of the child before and after quickening has been recognized by providing a much severer punishment for the destruction of a child after it has quickened than for the destruction of a child before it has quickened. It is so with the statutes under which the appellant was prosecuted. Moreover, the violation of Section 1112 is made a felony, whereas the violation of Section 1113 is a misdemeanor. It is obvious that the word "child" was not used in the same sense in Section 1113 as in Section 1112; and it is clear to us that it was the intent of the legislature to make such distinction in the light of the common law rule, and much earlier statutes in England and this country. In an abortion the fetus is always destroyed, and if it be held that "child" covers the entire period of time of gestation from conception to birth, then in all abortions, there is the death of the child.

North Carolina has statutes of similar import as the statutes of this State covering abortions and attempted abortions, and in construing these statutes, the Supreme Court of North Carolina has recently followed the greater weight of authority, that in order to sustain a conviction for an abortion where the destruction of a child is alleged, the child with which the woman is pregnant must be so far advanced as to be regarded in law as having a separate existence—a life capable of being destroyed. In so holding, the Court cited and quoted with approval from *Commonwealth v. Parker, supra,* and *State v. Cooper, supra.* See *State v. Forte, supra,* and *State v. Jordan,* 227 N. C. 579, 42 S. E. (2d) 674.

Section 1112 is directed to a case where a pregnant woman is aborted, or attempted to be aborted, and dies by reason thereof, or where a woman "quick with child" is aborted, or attempted to be aborted, and

either the woman or the child dies. Section 1113 is directed to a case where a woman is aborted, or attempted to be aborted, in the early stages of pregnancy and prior to the time when it could be said that she was "quick with child," that is, when the embryo gives the first physical proof of life—when the embryo has advanced to that degree of maturity where the child has a separate and independent existence and the woman has herself felt the child alive and quick within her, and death to the woman does not result.

There was a total failure on the part of the State to produce testimony of very necessary elements to sustain a conviction under Section 1112. The physician who examined the prosecutrix testified that he ascertained from this examination (and we interpolate, from her statements to him) that she was between two and one-half and three months pregnant; and it was on the day of this examination that the abortion was alleged to have been performed. It was necessary for the prosecutrix to have an examination by a physician to determine whether she was pregnant, the only indication to her being that she had missed her second menstrual period, after having made herself responsive to such condition. There is no medical testimony that as soon as even three months after conception there is more than the fetus, and it appears to be a recognized and acknowledged fact that within the first three months of pregnancy, the child has no independent existence.

The only reasonable inference to be drawn from the testimony is that at the time of the alleged abortion, the prosecutrix was not "quick with child," in that there was no physical proof of life, the embryo had not advanced to that degree of maturity where the child had a separate and independent existence, nor had the prosecutrix felt the child alive and quick within her.

It follows from the foregoing conclusion that the trial Judge erred in refusing the appellant's motion for a direc-

tion of verdict of not guilty under the first count; and that the case should have been submitted to the jury on only the second count.

Reversed and remanded for such other and further action as the respondent may be advised.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.

OXNER, Justice (concurring).

I am in full accord with the opinion of the Court but think that we should state more definitely what "further action" may be taken in the Court below.

Where there are several counts in an indictment charging separate and different offenses, a verdict of guilty upon one count ordinarily amounts to an acquittal upon the remaining counts concerning which the verdict is silent, but this general rule does not apply to the situation before us. When the jury found appellant guilty of violating Section 1112, that body necessarily concluded that the State had established all the elements essential to a conviction under Section 1113. Stated differently, a verdict of guilty on the first count would be entirely inconsistent with a verdict of acquittal on the second hand. There is no basis to support an inference of an implied acquittal on count two from a verdict of guilty on count one. Accordingly, I think the case should be remanded for a new trial on count two of the indictment.

The opinion of the Chief Justice leaves the question of whether appellant may again be tried on count two undetermined. It is true that the effect of a reversal for insufficiency of the evidence as to count one has not been discussed by counsel but it necessarily arises in determining the nature of our mandate, and I think the orderly administration of justice requires that the question now be settled.

This opinion having now been concurred in by two other members of the Court, the case is remanded for a new trial on count two of the indictment.

FISHBURNE and STUKES, JJ., concur.