COMMONWEALTH *vs.* ALFRED LEGER.

Norfolk.    May 21, 1928. — June 28, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Abortion.    Evidence,* Competency, Presumptions and burden of proof; Opinion: expert; State's evidence. *Practice, Criminal,* Discretionary control of evidence. *Witness,* Cross-examination, Credibility.

At the trial of an indictment charging the defendant, a physician, with using a certain instrument upon the body of a woman with intent to procure her miscarriage, testimony by the woman was competent that, on the day she first met the defendant, "she thought she was pregnant"; and that, although she did not know what the defendant did at the time he treated her, "he put something inside of me."

Evidence was admitted at the trial above described that the woman, believing she was pregnant, consulted a second woman, who thereupon looked up the defendant's number in the telephone book, called that number and asked a man who answered if he were the defendant, to which the man answered, "Yes," although she did not recognize his voice; that she told the man that she had a sick friend and asked him to see her; and that she thereupon communicated what was said to her to the first woman, who came to her house the next day. There also was evidence that the defendant came to the house the next day and performed an operation upon the first woman. *Held,* that

(1) A finding was warranted that the defendant was the man who answered the second woman's telephone call; and that the meeting of the first woman and the defendant was arranged by the second woman at the request of the first woman;

(2) No error was shown in the admission of the evidence.

No error appeared in the admission, at the trial above described, of testimony by a medical expert that clinical examinations of the woman upon whom the operation was performed disclosed conditions which were consistent with septic abortion.

The defendant testified at the trial above described that, when he attended the woman, he had been suspended from the practice of medicine. The judge permitted the district attorney in cross-examination to ask the defendant whether he told the woman that fact. *Held,* that such a question was within the discretion of the judge and that no abuse of discretion appeared.

At the trial above described, the defendant admitted that he was at the house and saw the woman but denied that he treated her or used any

instrument. There was evidence that the defendant at that time thrust something into the woman's womb which caused her much pain; that it was withdrawn after a few minutes; and that the woman thereafter was sick and confined in a hospital for about three weeks as a result of "septic abortion." The judge denied a motion by the defendant that the jury be ordered to return a verdict of not guilty. *Held*, that

(1) There was evidence that the defendant purposely caused a miscarriage;

(2) The motion rightly was denied.

The second woman, who was a witness for the Commonwealth at the trial above described, had been indicted as an accessory before the fact. The Commonwealth's case did not depend solely on her testimony. The judge refused certain requests for rulings by the defendant as to the weight to be given to her testimony. *Held*, that it was within the discretion of the judge to caution the jury as to her testimony or to leave to them the question of her credibility; and no error appeared in the refusal of the defendant's requests for rulings.

INDICTMENT, found and returned on December 9, 1927, charging the defendant with using a certain instrument upon the body of a woman with intent to procure her miscarriage.

In the Superior Court, the defendant was tried before *McLaughlin*, J. The judge denied a motion by the defendant that the jury be directed to return a verdict of not guilty. The defendant was found guilty and filed an appeal with an assignment of errors.

With reference to the third and fourth errors assigned, Doris Demopoulos testified, subject to the defendant's exceptions, that after talking with Miss Crahan on the telephone, she looked up the defendant's name in the telephone book and called the number; that a male voice answered; that she asked, "Is this Dr. Leger?" and the other person said, "Yes," although she did not recognize his voice; that she told him she had a sick friend and asked him to see her; and that she thereupon communicated what was said to her by the man to Miss Crahan, who came to her house the next day.

Other errors assigned are described in the opinion.

*W. J. Patron*, for the defendant.

*W. P. Kelley*, Assistant District Attorney, for the Commonwealth, submitted a brief.

BRALEY, J. The jury could find on the evidence introduced by the Commonwealth that Anna E. Crahan, an

unmarried woman twenty-one years of age, believing herself
to be pregnant because menstruation had ceased for two
preceding periods, left her home October 6, 1927, and went
by appointment to the house of one Doris Demopoulos at
45 Vernon Street in the town of Brookline, where she arrived
at 10:30 A.M. The defendant, who resided in Boston, a
physician by profession but whose license to practise had
been suspended, came to the house at about eleven o'clock.
Miss Crahan met him in the hall and took him to an upstairs
room. The defendant asked "who the man was that was
responsible for me," and Miss Crahan replied that she
"would not tell him." The defendant then directed her to
lie upon a bed, which she did, lifting her clothes, when the
defendant thrust something into her womb which remained
for four or five minutes causing her much pain, and then was
withdrawn. She was sick and confined to a hospital for
about three weeks as the result of a "septic abortion."

The defendant, who testified in his own behalf, admitted
that he was at the house and saw Miss Crahan but denied
that he treated her or used any instrument. In this con-
nection we refer to the defendant's exceptions to the rulings
on evidence. It was competent for Miss Crahan to testify
that, on the day when she first met the defendant, "she
thought she was pregnant," and that the defendant directed
her to lie on the bed, and although she said, "I don't know
what he did then," her further answer that "he put some-
thing inside of me," was admissible. The jury also could
find that Doris Demopoulos telephoned the defendant to
come to her house on the day in question, and there was
ample evidence for the jury that he was the person who
answered her call. The jury also could find on all the cir-
cumstances that the meeting of the defendant with Miss
Crahan was arranged by Mrs. Demopoulos at the request of
Miss Crahan. The defendant's first, second, third and fourth
assignments of error accordingly have no merit.

The evidence of Dr. Thompson, a medical expert who was
called by the Commonwealth and was found by the court
to be qualified, that the clinical examinations of Miss
Crahan were consistent with septic abortion, was founded

on the evidence, and no error appears in the fifth assignment. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527.

The sixth assignment relating to questions asked by the district attorney in his cross-examination of the defendant is untenable. The defendant testified that when he saw Miss Crahan he had been suspended from the practice of medicine. The questions, whether he told Miss Crahan of the fact, were within the discretion of the judge, which is not shown to have been abused. *Commonwealth* v. *Sacco*, 255 Mass. 369.

It is contended under the seventh assignment that the defendant's motion for a directed verdict of not guilty should have been granted. It was denied rightly. There was evidence that by the defendant's acts a miscarriage had been purposely caused, which is made a crime by G. L. c. 272, § 19. *Commonwealth* v. *Wagner*, 231 Mass. 265. *Commonwealth* v. *Nason*, 252 Mass. 545.

The eighth, ninth, tenth, eleventh and twelfth assignments are expressly waived.

The remaining assignments are to the refusal of the judge to give the defendant's requests concerning the weight to be given to the evidence of Mrs. Demopoulos, who had been indicted as an accessory before the fact, but was called as a witness by the Commonwealth, and gave evidence of her participation in arranging for the attendance at her house of the defendant, with knowledge of the condition of Miss Crahan, as the jury could find, and the purpose for which he had been procured. Doubtless it could be found that she was an accessory. *Commonwealth* v. *Sinclair*, 195 Mass. 100. And her evidence, if believed, tended to show the guilt of the accused. While the case for the Commonwealth did not depend solely on the evidence of Mrs. Demopoulos, the general rule of practice is to caution a jury not to convict where the evidence consists of the uncorroborated testimony of an accomplice. *Commonwealth* v. *Wilson*, 152 Mass. 12, 14. But such instructions may be refused in the discretion of the judge, who rightly in the case at bar left the question of her credibility to the jury. *Commonwealth* v. *Bishop*, 165 Mass. 148, 150.

*Judgment affirmed.*